United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

CHARLES W. TRAPP,

    Petitioner,

vs.

ROBERT K. WONG, Warden,

    Respondent.
                           /

No. C 09-1284 PJH (PR)

**ORDER DENYING HABEAS PETITION AND GRANTING CERTIFICATE OF APPEALABILITY**

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. § 2254. The petition is directed to a denial of parole.

This court ordered respondent to show cause why a writ should not issue. After respondent had answered and petitioner had filed a traverse, the United States Court of Appeals for the Ninth Circuit decided *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010), in which a number of important issues involving parole habeas cases were raised. In consequence, the court ordered the parties to provide supplemental briefs addressing the impact of *Hayward* on this case, which respondent has done. For the reasons set forth below, the petition will be denied.

## BACKGROUND

In 1985 petitioner pled guilty to second degree murder and was sentenced to prison for sixteen years to life. This petition is directed to a denial of parole on February 29, 2008.

## DISCUSSION

**I.    Standard of Review**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's

adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340.  This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).  A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual

determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**II.    Impact of *Hayward***

In *Hayward* the en banc court held that there is no constitutional right to "release on parole, or to release in the absence of some evidence of future dangerousness" arising directly from the Due Process Clause of the federal constitution; instead, any such right "has to arise from substantive state law creating a right to release." *Hayward*, 603 F.3d at 555. The court overruled *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003); *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123 (9th Cir. 2006); and *Irons v. Carey*, 505 F.3d 846 (9th Cir. 2007), "to the extent they might be read to imply that there is a federal constitutional right regardless of whether state law entitles the prisoner to release . . . ." *Hayward*, 603 F.3d at 556. All three of those cases had discussed the "some evidence" requirement, but in all three it was clear that the requirement stemmed from a liberty interest created by state law; that portion of the cases, therefore, was not overruled by *Hayward*. *See Biggs*, 334 F.3d at 914-15; *Sass*, 461 F.3d at 1127-19; *Irons*, 505 F.3d at 850-51; *see also Cooke v. Solis*, 606 F.3d 1206, 1213-14 (9th Cir. 2010) (post-*Hayward* case; noting that California law gives rise to a liberty interest in parole). However, all three also contained references in dictum to the possibility that "[a] continued reliance in the future on an unchanging factor, the circumstances of the offense and conduct prior to imprisonment, [would] run[] contrary to the rehabilitation goals espoused by the prison system and could result in a due process violation." *Biggs*, 334 F.3d at 916-17; *see also Sass*, 461 F.3d at 1129; *Irons*, 505 F.3d at 853-54. It appears that this possibility, referred to below as a "*Biggs* claim," is the only thing that was "overruled" by *Hayward*.

Aside from making clear that there could be no *"Biggs* claim" arising directly from the Due Process Clause of the Constitution, cases decided subsequent to *Hayward* have clarified that federal habeas review of California parole decisions remains much the same as it was prior to that decision. The Ninth Circuit still recognizes that California law gives rise to a liberty interest in parole. *Pirtle*, 611 F.3d 1015, 1020-21 (9th Cir. 2010); *Cooke,* 606 F.3d at 1213-14; *Pearson,* 606 F.3d at 610-11. Under California law, "some evidence" of current dangerousness is required in order to deny parole. *Hayward*, 603 F.3d at 562 (citing *In re Lawrence*, 44 Cal. 4th. at 1191, 1209-15 (2008), and *In re Shaputis*, 44 Cal.4th 1241 (2008)). "California's 'some evidence' requirement is a component of the liberty interest created by the parole system of that state." *Cooke*, 606 F.3d at 1213. A federal court considering a "some evidence" claim directed to a parole denial thus must determine whether there was "some evidence" of current dangerousness to support the parole board's decision; if not, the prisoner's due process rights were violated. This was also true prior to *Hayward*, although now the rationale is that the Court is applying California's "some evidence" rule as a component of the required federal due process.

Respondent contends that *Hayward* allows only review for whether a state's parole procedures provide adequate procedural protections, not for whether those protections were properly applied by the Board or the state reviewing courts. Supp. Br. at 5-6. That is, there would be no review for whether a parole denial was supported by "some evidence," but only for whether California law requires that denials be supported by "some evidence" – as of course it does – and whether the state courts conducted that review. *Id.* at 6-7. This court must follow the Ninth Circuit's cases, so these contentions are rejected.

**III.   Issues Presented**

    **A.   Respondent's Contentions**

In the answer, respondent argues that California prisoners have no liberty interest in parole, and that if they do, the only due process protections available are a right to be heard and a right to be informed of the basis for the denial – that is, respondent contends there is no due process right to have the result supported by sufficient evidence. He says

4

these contentions are made to preserve the issues for appeal.  As discussed further below, even after the en banc decision in *Hayward*, these contentions are incorrect.  *See Pirtle v. California Bd. of Prison Terms*, 611 F.3d 1015, 1020-21 (9th Cir. 2010) (California law creates a federal liberty interest in parole; that liberty interest encompasses the state-created requirement that a parole decision must be supported by "some evidence" of current dangerousness); *Cooke v. Solis*, 606 F.3d 1206, 1213-14 (9th Cir. 2010) (same); *Pearson v. Muntz*, 606 F.3d 606, 610-11 (9th Cir. 2010) (same).

Respondent is correct, however, that if the court concludes that the Board's decision was not supported by "some evidence," the correct remedy is not to order that he be released on parole, but rather to order that the Board conduct another eligibility hearing at which the prisoner's rights are respected.  *See Haggard v. Curry*, No. 10-16819 (9th Cir. Order Oct. 12, 2010).

### B.   Petitioner's Claims

Petitioner asserts that: (1) the denial was not supported by "some evidence;" (2) the denial was arbitrary and capricious; and (3) the regulations defining suitability for parole are unconstitutionally vague.

#### 1.   "Some Evidence" Claim

Petitioner contends that denial of parole was not supported by "some evidence" and thus violated his due process rights.

A federal district court reviewing a California parole decision "must determine 'whether the California judicial decision approving the governor's [or the Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'"  *Hayward*, 603 F.3d at 562-63 (quoting 28 U.S.C. § 2254(d)(1)-(2)).  That requirement was summarized in *Hayward* as follows:

> As a matter of California law, 'the paramount consideration for both the Board and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety.'  There must be 'some evidence' of such a threat, and an aggravated offense 'does not, in every case, provide evidence that the inmate is a current threat to public safety.'

5

*Id.* at 562 (quoting *Lawrence*, 44 Cal.4th. at 1191, 1209-15); *see also Cooke*, 606 F.3d at 1214 (describing California's "some evidence" requirement). The circumstances of the commitment offense itself "cannot constitute evidentiary support for the denial of parole 'unless the record also established that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicated that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.'" *Cooke*, 505 F.3d at 1216 (quoting *Lawrence*, 44 Cal. 4th at 1214).

The facts of the offense were read into the record by the Presiding Commissioner, and because petitioner asserted his right not to discuss his crime, they are not disputed. Pet. at Ex. A (transcript of parole hearing, hereafter cited as "Tr.") at 16.

> On February 1, 1982, the victim was reported missing by his mother. On September 1st, 1984, the victim's family received a phone call from an anonymous male, who stated that their son had been murdered and that he was buried in the desert. He stated he would sell the information to the Powell[s] and would draw them a map of the location where their son was buried.
>
> [¶] The Powell[s] told investigators that they thought a person by the name of Bill Smith had made the anonymous phone call, as they had heard rumors recently that he knew where their son had been buried. Investigators contacted Smith and stated that he [sic] knew everything. Chuck Trapp had told him that he killed victim Powell and had shown Smith where he had buried the body. Smith stated that he and Trapp had been friends for 15 years, but they had recently had a falling out because of a girl. Smith stated that on August 30th, 1984, Trapp had fired numerous rounds from a 9 mm automatic into the house where he and Donald Mauch . . . were living in an attempt to kill him.
>
> [¶] Smith stated in Feberusary 1982 Chuck Trapp asked him if he wanted to go hunting, and they went. They made a bonfire and were sitting around it drinking, when Trapp stated, 'Guess what? I brought Butch out here and wasted him.' Trapp stated that he and the victim had gone hunting. They drank some beer, and then Trapp shot the victim the back with a 9 mm automatic pistol. Trapp then dragged the victim six or eight feet and handcuffed him to an exposed root of a large tree. Trapp told Smith that the victim was pleading with him to help, at which time Trapp stated, 'There is no help for you,' and fired eight rounds from the automatic pistol next to the victim's head. He then told the victim, 'When I come back, they won't be next to your head. I'm going to leave now and go call some people who hate you so they can have some fun with you, too.' Trapp then left the location to make the phone call.

[¶] When he returned, the victim was stiff. Trapp then told him [sic] that he had lost the handcuff key and had to blow the victim's hand off to get them loose. He reported that he then dug a grave near the body and dragged the victim to the grave. Due to the fact that the victim was stiff, he would not fit into the grave. Trapp had to break his legs to fit him into the grave. He then fired two boxes of shotgun shells into the victim's body so no one would be able to recognize him. He also collected all of the shotgun shells so no one would find them, and in his words stated, 'I policed the area.' He showed Smith where he had buried the body. He further stated that Trapp had shown him where he had handcuffed the victim to a tree and that he had observed hair on the root of the tree and what appeared to be bloodstains in the sand. He also said he had learned where there would be a gravesite mound.

[¶] In April o[r] May of 1982, he stated that he had seen Polaroid pictures of the gravesite on the back of Trapp's bedroom door. He stated that he did not tell anybody about this occurrence because he was afraid that Trapp would kill him. However, he said that due to the fact that he was trying kill him anyway, he might as well tell. Police went to the gravesite and the body was recovered.

Tr. 17-20.[1]

At the time of the hearing in 2008, petitioner was approximately forty-nine years old and had served about twenty-three years on his sentence of sixteen years to life. See *id.* at 3, 26.

The offense obviously was brutal and cruel, and included torture. But the *Lawrence* standard requires more than this to support a finding of current dangerousness: "'something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicat[ing] that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.'" *Cooke*, 505 F.3d at 1216 (quoting *Lawrence*, 44 Cal. 4th at 1214). Here, that "something" was that (1) he described his crime as "careless," suggesting an off-hand attitude to a particularly brutal murder, Tr. 38; (2) he fired shots at the witness, Smith, two years after the offense, showing a continuing propensity for firearms violations, *id.* at 44; (3) he did not participate in Alcoholics Anonymous or other substance abuse programs, despite alcohol and drugs

---

[1] [¶] indicates where paragraphing has been introduced to make the description easier to read.

7

being involved in the crime and having been instructed by previous boards to participate in some sort of self-help, *id.* at 57-58; (4) the psychological report stated that he had a "moderate to low" risk of "violent recidivism," a level of risk the Board could consider unacceptable, *id.* at 71; and (5) his employment plans were not documented, *id.* at 92-94.

In light of this evidence, the state courts' applications of the California "some evidence" requirement, and those courts' consequent rejections of the claim, were not "based on an unreasonable determination of the facts in light of the evidence." *See* 28 U.S.C. § 2254(d)(2). This claim therefore cannot be the basis for federal habeas relief. *See Cooke*, 606 F.3d at 1215 (federal habeas court considering California parole "some evidence" claim must apply § 2254(d)(2)); *Hayward*, 603 F.3d at 562-63 (requiring application of California's "some evidence" standard).

### 2. Arbitrary and Capricious

Petitioner also contends that the denial was "arbitrary and capricious." To some extent this duplicates his argument in claim one that the denial was not supported by "some evidence," and to that extent it is without merit for the reasons set out above. However, in this issue he also asserts that the denial was arbitrary and capricious because he has served more than the time prescribed by the "matrix."

According to the California Supreme Court, the Board is under no duty to apply the matrix under it has determined that a prisoner is suitable for parole. *In re Dannenberg*, 34 Cal. 4th 1069, 1071 (Cal. 2005). "The Legislature has not disturbed the Board's long-standing formal policy that a determination of individual suitability must precede the setting of a "uniform" parole release date." *Id.* "The BPT acts properly in determining unsuitability, and the inmate receives all constitutional process due, if the Board provides the requisite procedural rights, applies relevant standards, and renders a decision supported by "some evidence." *Id.*

In the absence of California law requiring application of the matrix, and in view of the fact that in fact the Board's decision was supported by the evidence, failure to apply the matrix could not have been a violation of due process. This claim is without merit.

8

### 3.    Vagueness

Petitioner also contends that the Board regulation that says that a prisoner's offense tends to show unsuitability for parole if it was committed "in an especially heinous, atrocious, or cruel manner," Cal. Code Regs. tit. 15, § 2402(c)(1), is unconstitutionally vague.   Section 2402(c)(1) reads:

> (c) Circumstances Tending to Show Unsuitability. The following circumstances each tend to indicate unsuitability for release. These circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate unsuitability include:
>
> > (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
> >
> > > (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
> > >
> > > (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
> > >
> > > (C) The victim was abused, defiled or mutilated during or after the offense.
> > >
> > > (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
> > >
> > > (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

*Id.*

Vagueness challenges made under the Due Process Clause "rest on the lack of notice." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988).  A statute or regulation is unconstitutionally vague "if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes, or if it invites arbitrary and discriminatory enforcement." *United States v. Doremus*, 888 F.2d 630, 634 (9th Cir. 1989).  Vagueness challenges to statutes or regulations that do not threaten First Amendment rights, such as this one, are analyzed on an as-applied basis.  *Maynard,* 486 U.S. at 361. Thus, the issue

1 before the court is whether § 2402(c)(1) provided petitioner with adequate notice and the
2 Board and state courts with adequate guidance.

3 "The Due Process Clause does not require the same precision in the drafting of
4 parole release statutes as is required in the drafting of penal laws." *Hess v. Board of*
5 *Parole and Post-Prison Supervision*, 514 F.3d 909, 913-14 (9th Cir. 2008). The language
6 following this phrase provides a list of five factors to consider when determining whether a
7 crime is especially "heinous, atrocious or cruel," including the abuse or mutilation of the
8 victim and a trivial motive for the crime. *See* 15 Cal. Code Regs. § 2402(c)(1)(A)-(E). The
9 term "especially heinous, atrocious, or cruel," as further limited by five detailed factors/sub-
10 definitions, is not constitutionally vague. *Cf. Arave v. Creech*, 507 U.S. 463, 470-78 (1993)
11 (Idaho death penalty statute citing as an aggravating factor crimes carried out in an "utter
12 disregard for human life" was not impermissibly vague because limiting construction had
13 been adopted which defined factor as those crimes demonstrating "the utmost disregard for
14 human life, i.e., the cold-blooded pitiless slayer").

15 Petitioner killed the victim in a particularly brutal manner over $200. Tr. 32, 43, 62.
16 His as-applied challenge fails because his activity fit squarely within one of the listed factors
17 to be considered in determining whether the offense was committed in an especially
18 heinous, atrocious or cruel manner: "the motive for the crime is inexplicable or very trivial in
19 relation to the offense." Cal. Code Regs., tit. 15 § 2402(c)(1). The state courts' rejection of
20 petitioner' claim was not an objectively unreasonable application of clearly established
21 Supreme Court precedent. *See* 28 U.S.C. § 2254(d).

22 **IV.    Appealability**

23 The federal rules governing habeas cases brought by state prisoners require a
24 district court that denies a habeas petition to grant or deny a certificate of appealability
25 ("COA") in the ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. §
26 2254 (effective December 1, 2009).

27 A petitioner may not appeal a final order in a federal habeas corpus proceeding
28 without first obtaining a certificate of appealability. *See* 28 U.S.C. § 2253(c); Fed. R. App.

P. 22(b).  A judge shall grant a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The certificate must indicate which issues satisfy this standard.  *See id.* § 2253(c)(3).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Whether there was "some evidence" to support a parole denial is often a matter of judgment, as it was here, unless there is overwhelming evidence one way or the other.  The court therefore concludes that jurists of reason could find the result here as to that issue debatable or wrong.  A COA therefore will be granted on the "some evidence" claim.  Petitioner is advised that even when a COA is granted, a petitioner wishing to appeal still must file a notice of appeal in the district court.  *See* Rule 11(b), Rules Governing § 2254 Cases.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**.  A certificate of appeal ability is **GRANTED** as to the "some evidence" claim; it is **DENIED** as the other two claims.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: October 22, 2010.

PHYLLIS J. HAMILTON
United States District Judge

P:\PRO-SE\PJH\HC.09\TRAPP1284.RUL.wpd